UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QIETH McQUREERIR,<br><br>     Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>     Defendants. | Civil Action 05-02175  (HHK) |

MEMORANDUM OPINION

  Qieth McQureerir brings this action against the United States of America; the Public Health Service; the Department of Health and Human Resources; Unknown Agencies 1–5; United States Postmaster General John E. Potter; United States Postal Service ("USPS") Chief Operating Officer, Patrick Donahue; USPS Vice President of Engineering, Thomas Day; USPS Washington D.C. Processing and Distribution Center Plant Manager, Timothy C. Haney; Director of the Center for Disease Control and Prevention; and Unknown Federal Officials, Supervisors, Managers, Etc. 6–10 (collectively, "the Individual Defendants").  McQureerir seeks relief for what he alleges are violations of his rights under the Fifth Amendment of the U.S. Constitution, as well as a variety of common law torts.[1]  Before the court is defendants' motion

---

  [1] Specifically, McQureerir asserts claims for intentional infliction of emotional distress, battery, negligence, premises liability, strict liability for abnormally dangerous activity, intentional misrepresentation—deceit, intentional misrepresentation—non-disclosure of material fact, constructive fraud, and civil conspiracy.

to dismiss the complaint. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that defendants' motion must be granted.[2]

## I. BACKGROUND

McQureerir is an employee of the USPS and during October 2001, was assigned to the USPS Brentwood Processing and Distribution Center ("Brentwood Center"). McQureerir's claims arise from the processing of an anthrax-laden letter at the Brentwood Center, a letter eventually delivered to the office of Senator Tom Daschle on October 15, 2001.

Stated simply, McQureerir contends that the various defendants in this case intentionally or recklessly misled employees of the Brentwood Center about the risk of anthrax-infection in the days that followed the anthrax attack on Senator Daschle's office. According to McQureerir, on October 15, 2001, Postmaster General Potter publicly announced that the USPS mail-system was safe, Compl. ¶ 46, yet the full extent of the danger posed to USPS employees was largely unknown at this point. At the same time that Potter was pronouncing the mail-system's safety, McQureerir alleges that Potter was still coordinating the USPS's response to the anthrax attack with USPS employees. *Id.* ¶ 47.

McQureerir maintains that as early as October 18, 2001, USPS officials, including Brentwood Center plant manager Haney, knew both that the infected letter had passed through the Brentwood facility and that the anthrax used in the attack was extremely potent. *Id.* ¶ 51, 54, 56–57. On October 18th and 19th, the Brentwood facility was tested for anthrax contamination by private consultants, as well as the Fairfax County HAZMAT team. At a minimum, the

---

[2] This action was originally filed in the District of Maryland. By order dated October 26, 2005, Judge Alexander Williams, Jr. transferred the case to the District of Columbia. *McQureerir v. United States*, No. 05-02175, slip op. at 9 (D. Md. Oct. 26, 2005).

findings of the private consultants indicated that the Brentwood facility was contaminated with anthrax. *Id.* ¶ 62. Nevertheless, representatives from USPS continued to insist that the Brentwood Center was free from anthrax contamination.

By October 20, 2001, Haney's notes indicate that he was aware that at least one USPS employee was possibly suffering from exposure to inhalation-anthrax. McQureerir alleges that despite this knowledge, Haney continued to reassure employees at the Brentwood Center that there was no evidence of any anthrax contamination. *Id.* ¶ 64. McQureerir also alleges that Haney was belligerent towards employees that questioned the safety procedures established in the wake of the anthrax attack, and dismissive of their complaints. *Id.* ¶ 65.

On October 21, 2001, Mr. Thomas Morris, Jr., a Brentwood facility employee, called 911 and complained of anthrax-like symptoms. Several hours later, Morris died as a result of inhalation-anthrax. Only after Morris's death was the Brentwood Center shut down and USPS employees working at the Center were given antibiotics. Despite these measures, Mr. Joseph Curseen, another USPS employee working at the Brentwood Center, died of inhalation-anthrax on October 22, 2001. At least two other employees were hospitalized on the same day.

## II.  ANALYSIS

### A.  Legal Standard

The United States and the Individual Defendants have moved to dismiss McQureerir's complaint. A motion to dismiss is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (internal quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (stating that a complaint should not be dismissed "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In addition, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged").

**B. McQureerir's *Bivens* Claims**

Relying on the theory of recovery articulated in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), McQureerir asserts claims against federal officials for damages arising from a violation of his constitutional rights. Specifically, McQureerir alleges that the Individual Defendants abrogated his substantive and procedural due process rights under the Fifth Amendment.

According to McQureerir, defendants' conduct denied him his procedural due process rights by "(a) providing false and/or misleading information about the safety of the Brentwood facility after they knew the facility was contaminated with anthrax; and/or (b) failing to provide accurate information about the safety of the Brentwood facility after they knew the facility was contaminated with anthrax." Compl. ¶ 87. McQureerir further alleges that his substantive due process rights were infringed upon when defendants "(a) fail[ed] to invoke USPS emergency response procedures or otherwise close the Brentwood facility in a timely manner after they knew the facility was contaminated with anthrax; (b) provid[ed] false and/or misleading information to

Plaintiff about the safety of the facility after they knew it was contaminated with anthrax and/or (c) fail[ed] to provide accurate information to plaintiff about the safety of the facility after they knew it was contaminated with anthrax." Compl. ¶ 91.

*Bivens* does not offer a basis for the relief McQureerir seeks. Defendants state correctly that courts have construed narrowly access to a *Bivens* action. *See, e.g., Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that the Court has "consistently refused to extend constitutional tort liability to any new context or new category of defendant"). "Under *Bivens*, 'special factors' may counsel 'hesitation in the absence of affirmative action by Congress' establishing liability for the acts of individual government employees." *See Thomas v. Princippi,* 394 F.3d 970, 975 (D.C. Cir. 2005) (quoting *Bivens*, 403 U.S. at 396). Where, for example, "an elaborate remedial system . . . with careful attention to conflicting policy considerations" has been constructed by Congress, such hesitation is warranted. *See Bush v. Lucas*, 462 U.S. 367, 388 (1983).

While the viability of a *Bivens* claim for the conduct that occurred at the Brentwood Center was previously ambiguous, the D.C. Circuit has provided a definitive answer as to whether or not *Bivens* is the appropriate means by which to seek redress for this type of harm. The D.C. Circuit recently held that the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101, *et seq.*, is precisely the sort of "elaborate, comprehensive scheme" that counsels against permitting a *Bivens* action. *See Richmond v. Potter*, 2005 WL 3805379, at *1 (D.C. Cir. Nov. 7 2005); *Briscoe v. Potter*, 2005 WL 3804992, at *1 (D.C. Cir. Nov. 7, 2005). As the court explained, the purpose of FECA is to establish an exclusive system under which the government

must "pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." *Richmond*, 2005 WL 3805379, at *1 (*quoting* 5 U.S.C. § 8102(a)).

The claims in both *Richmond* and *Briscoe* arose from substantially similar facts as those presented here—the respective plaintiffs seeking recovery for injuries incurred in connection with the anthrax contamination of the Brentwood Center. In *Richmond*, the plaintiff claimed that his procedural and substantive due process rights, as set forth in the Fifth Amendment's Due Process Clause, had been violated. In *Briscoe*, the plaintiffs alleged violations of their substantive due process and equal protection Fifth Amendment rights. In both instances the D.C. Circuit concluded that FECA provides the sole remedy for the plaintiffs' injuries and thereby forecloses the possibility of a *Bivens* action. *See Richmond*, 2005 WL 3805379, at *1; *Briscoe*, 2005 WL 3804992, at *1.

In light of the clear statement by the D.C. Circuit, this court finds the existence of FECA prohibits McQureerir from proceeding with his *Bivens* action. Accordingly, defendants' motion to dismiss McQureerir's *Bivens* claims is granted.

## C. McQureerir's Common Law Claims

McQureerir also asserts a variety of common law tort claims against the United States and the Individual Defendants.

### 1. *McQureerir's claims against the Individual Defendants*

With respect to the Individual Defendants, defendants argue that the Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA"), 28 U.S.C. § 2679(b), provides that

the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) is the exclusive remedy for all claims against employees of the federal government that were acting within the scope of their employment at the time of the alleged act or omission at issue.[3] While FELRTCA contemplates two exceptions to this general rule—actions brought (a) for a violation of the Constitution of the Untied States, or (b) for a violation of a statute of the United States under which such action against an individual is otherwise authorized, 28 U.S.C. § 2679(b)(2)—with respect to plaintiff's common law claims, neither exception is applicable.

The FELRTCA further states that once the Attorney General certifies that a federal employee is acting within the scope of his/her employment at the time of the disputed activity, the action shall be deemed an action against the United States and the United States will be substituted as the sole permissible defendant in the resulting FTCA action. *See* 28 U.S.C. § 2679(d); *Nevada v. Hicks*, 533 U.S. 353, 400 (2001). In this case, certification has been issued for each of the Individual Defendants. *See* Defs.' Mot. to Dismiss, Ex. 2 (Certification of Scope of Employment, dated May 5, 2005).[4] Accordingly, the claims against the individual defendants

---

[3] FELRTCA states in pertinent part:
The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.
28 U.S.C. § 2679(b)(1).

[4] Though the Attorney General's scope-of-employment certification substitutes the United States for the individual employees by operation of law, the certification is subject to challenge. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436–37 (1995). In the instant case,

are dismissed and the only remaining defendant is the United States government. *See Gutierrez de Martinez*, 515 U.S. at 420 ("Upon certification, the employee is dismissed from the action and the United States is substituted as defendant.  The case then falls under the governance of the Federal Tort Claims Act . . . [i]f, however, an exception to the FTCA shields the United States from suit, the plaintiff may be left without a tort action against any party.").

   2.  *McQureerir's claims against the United States*

McQureerir's tort claims against the United States must also be dismissed.  As discussed *supra* at Part II(B), FECA was established to compensate employees of the federal government for workplace-related injuries.  Notwithstanding FECA's goal of compensating injured employees, FECA precludes civil actions by federal employees seeking recovery for injuries sustained during the course of their employment.  FECA "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983).  FECA provides that "[t]he liability of the United States . . . under [FECA] with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States . . . ."  5 U.S.C. § 8116(c).  The Supreme Court explained in *Lockheed*:

> In enacting [FECA], Congress adopted the principal compromise—the "quid pro quo"—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

460 U.S. at 194.

---

McQureerir has not elected to raise such a challenge.

Just as FECA prohibits McQureerir from pursuing a *Bivens* actions against the individual defendants, it also prohibits McQureerir's common law tort claims. In light of the foregoing analysis, the court grants defendants' motion to dismiss.

### III.  CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss is **GRANTED.** An appropriate order accompanies this memorandum.

>Henry H. Kennedy, Jr.
>United States District Judge

Dated: April 25, 2006